## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**KARLY R. CAHILL,**

    *Plaintiff,*

**v.**

**OFFICE OF THE EXECUTIVE SECRETARY**
**OF THE SUPREME COURT OF THE**     Case No. _____
**COMMONWEALTH OF VIRGINIA,**

**Serve (by private process server):**
  **Karl R. Hade**
  **Executive Sec. of the Supreme Court of Virginia**
  **100 North 9th Street**
  **Richmond, Virginia 23218**
  **Pursuant to Va. Code §8.01-300(3)**

    *Defendant.*

## COMPLAINT

   Karly R. Cahill ("Ms. Cahill") brings this action against the Office of the Executive Secretary of the Supreme Court of the Commonwealth of Virginia ("OES") under Title VII of the Civil Rights Act of  42 U.S.C. §§2000e(1) - 2000e(17) ("Title VII"); the gravamen of her claims is that she was: (a) subjected to a sexually hostile work environment when she was working as a judicial Magistrate in Virginia Beach, Virginia and (b) she was fired in retaliation for exercising her rights under Title VII.

### Parties

   1.  Ms. Cahill is a resident and domiciliary of the Commonwealth of Virginia. Ms. Cahill was sworn in as a Magistrate to serve in the Virginia Beach Magistrate Office on July 24, 2016, and she served in that position at all times applicable to this Complaint.

   2.  The Defendant OES is the Court Administrator for the Commonwealth of Virginia. *See* Va. Code §17.1-314. OES was Ms. Cahill's employer and supervisor, as that term

is defined in *Vance v. Ball State Univ.*, 570 U.S. 421 (2013), in that the power to hire and fire her resided in that office. *See* Va. Code §19.2-38 ("[M]agistrates . . . shall serve at the pleasure of the Executive Secretary").

## Jurisdiction, Exhaustion of Administrative Prerequisites, and Venue

3.      Jurisdiction lies properly in this Court pursuant to 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §1331.

4.      Ms. Cahill previously filed her administrative charge with the Equal Employment Opportunity Commission (**"EEOC"**).

5.      The EEOC issued Ms. Cahill a right-to-sue letter dated April 30, 2019. **Exhibit A.**

6.       This action is filed within 90 days of April 30, 2019.

7.      Venue lies properly in this Court pursuant to 42 U.S.C. §2000e-5(f)(3).

## Facts

I.      **Incidents Contributing to a Hostile Work Environment based on Sex:**

A.      **Thomas Cahill's remark about Ms. Cahill receiving his "birthday present":**

8.      On August 14, 2016, Ms. Cahill witnessed then-Magistrate Charles Lochart ("Lochart") become intoxicated in public.

9.      While Ms. Cahill was walking with Lochart on the Virginia Beach boardwalk, a homeless man, Edwin Page, exposed his genitals to Ms. Cahill and began touching same. Ms. Cahill dialed 911 immediately following this incident.

10.     When Ms. Cahill reported the incident to her supervisor[1], Thomas Cahill (no relation)("Mr. Cahill"), his response was, "So, you got the birthday present I sent you."

---

[1] Ms. Cahill alleges that Thomas Cahill was her "supervisor" within the rule of *Vance v. Ball State Univ.*, 570 U.S. 421 (2013), because, on information and belief, Mr. Cahill had the authority to take tangible adverse employment actions against Ms. Cahill. Mr. Cahill was the

**B.      Unwanted sexual advances by Magistrate Jack Hill:**

11.      On October 31, 2016, Ms. Cahill noticed that then-Magistrate Jack Hill ("Hill")

had become intoxicated at the Annual Magistrate Conference, a work-related event.

12.      Ms. Cahill then witnessed Hill staggering and falling due to his intoxication, so

Ms. Cahill offered to walk him to his hotel room.

13.      Hill then vomited and attempted to kiss Ms. Cahill when she tried to assist him.

14.      Hill then asked Ms. Cahill if she wanted to engage in a "threesome" with him and

another individual.

15.      Ms. Cahill refused both of these sexual advances. Ms. Cahill reported Hill's

unwelcomed sexual advances to several of her co-workers.

16.      The alcohol at the conference was provided by the Magistrates' Supervisors in

Richmond. The Supervisors hosted a bar room at the hotel for the Magistrates to drink and

handed out free drink tickets at the conference. No action was ever taken against Hill for his

public inebriation (which took place in full view of the Supervisors at the conference) or his

sexually based behavior towards Ms. Cahill.

---

Region 7 Magistrate Supervisor. *See* **Exhibit B** (the "chain of command" in the Magistrate's
office when Ms. Cahill worked there, showing that Mr. Cahill was just one operational level
down from the Director). At the meeting described in ¶42, at which Mr. Cahill fired Ms. Cahill,
Mr. Cahill fired her by saying: "We have decided that you're not going to be a Magistrate
anymore." His using "we" indicates that he had the decision-making authority to fire Ms. Cahill.
Additionally, the other individual present at the meeting, Ronald Batliner, newly appointed chief
of the Virginia Beach Magistrate's Office, had told Ms. Cahill after the incident described in
¶¶36-41 *infra* that Batliner would try to get her back to work as soon as possible. It was only
after Mr. Cahill got involved in disciplining Ms. Cahill that she was fired. Again, that points to
the fact that the decisionmaker who had the power to fire her was Mr. Cahill, and that makes him
a supervisor for the purposes of Title VII.

3

**C.      Sexual Battery by Magistrate Bertram Cowell:**

17.      On August 12, 2017, Ms. Cahill witnessed Magistrate Bertram Cowell

("Cowell"), a co-worker, become so intoxicated (in public, not in the office) that he vomited on

Ms. Cahill's arm.

18.      Two sheriff's deputies, who recognized Cowell, had to physically carry him and

put him in an Uber vehicle.

19.      Prior to being carried to the Uber vehicle, Cowell sexually battered Ms. Cahill,

grabbing her waist and buttocks and trying to pull Ms. Cahill onto his lap.

20.      Cowell was not disciplined for this incident.

**D.      Unwanted sexual comments by Magistrate Bertram Cowell:**

21.      On several occasions during her employment, Ms. Cahill was subjected to

Cowell's remarks that he "liked her butt."

22.      Cowell made several comments in the office, openly around co-workers, that he

"did not mind if Ms. Cahill came into his office, because he liked her butt," or words to that

effect.

23.      Cowell said this in the open in the office for anyone within earshot to hear;

Magistrate Jeremy Miller was an ear-witness to several of these comments.

**E.      False, public accusations at work of sexual promiscuity by Magistrate Paul
Sutton:**

24.      While Ms. Cahill was in the process of training new Magistrates, Ms. Cahill,

during a break in the training but still within earshot of the trainees, remarked that she was tired.

25.      Magistrate Paul Sutton ("Sutton") screamed out to her, accusing her falsely of

"being in a Navy Seal's bed all night" as the reason for her being tired.

4

26.     Sutton's very public and open false accusation happened in full view and earshot of all the other men and women whom Ms. Cahill was training, humiliated Ms. Cahill in front of them, and caused Ms. Cahill to lose respect among her peers.

**F.     Sexual remarks by Magistrate Carl Twiford:**

27.     On March 13, 2018, Carl Twiford ("Twiford"), the Magistrate in charge of training Ms. Cahill, told her, in full view of the office, that she would make more money "demonstrating dildos" than she would as a Magistrate.

28.     Twiford several times, again in full view of the office, remarked to Ms. Cahill in the office about the attractiveness of her calves, saying he "was a leg guy."

29.     Twiford said this to Ms. Cahill several times during Ms. Cahill's initial training, and Twiford told her "not to report him to HR."

**G.     Police Officers remarks about Ms. Cahill:**

30.     Ms. Cahill learned that while working in her capacity as a Magistrate in the Virginia Beach Circuit Courthouse, Virginia Beach police officers present at her hearings were digitally photographing her during her hearings.

31.     The police officers were then transmitting said pictures to other police officers with suggestive, sex-related captions, one of which was: "I'd fuck the shit out of this Magistrate."

32.     Once this information was brought to Ms. Cahill's attention, she immediately reported it to her supervisor, Mr. Cahill, on January 19, 2018, and asked him to help her get this behavior to stop.

33.     Mr. Cahill made no effort to fix the problem whatsoever. He never contacted anyone in the police officers' chain of command to get them to stop this behavior. After

reporting the incident, the first time, it was later brought to Ms. Cahill's attention that police officers continued to take pictures of her with suggestive messages attached. Again, neither Mr. Cahill or any other superior at her office took any action to stop this disgusting behavior.[2]

## II.    Retaliatory Firing:

34.    Following her reporting the sexual harassment, as such reports are described above, Ms. Cahill gauged that Mr. Cahill's reaction grew not just more ambivalent toward her harassment, but more disdainful toward Ms. Cahill personally.

35.    Ms. Cahill feared that if she reported any additional harassment contributing to a hostile work environment she had been forced to endure, that there would be repercussions and that she would be retaliated against. On May 2, 2018, her fears came to fruition.

### A.    Facts surrounding Ms. Cahill's firing:

36.    On April 20, 2018, off duty and in her own home, Ms. Cahill was attacked by another Virginia Beach Magistrate, Mr. Jeremy Miller ("Miller").

37.    Miller was highly intoxicated at the time of the attack.

38.    Because of the attack, Ms. Cahill feared for her life and dialed 911.

39.    Police responded to the scene, and Ms. Cahill explained to the officers exactly her account of what happened, which to this day has not been refuted, and which account was

---

[2] The fact that the police officers were employees of the City of Virginia Beach, and not the OES, does not absolve the OES from liability if the officers contributed to the hostile work environment. In *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 423 (4th Cir. 2014), the Court stated, "Similar to the reasoning set forth for employer liability for co-worker harassment, an employer cannot avoid Title VII liability for third-party harassment by adopting a "see no evil, hear no evil" strategy. Therefore, an employer is liable under Title VII for third parties creating a hostile work environment if the employer knew or should have known of the harassment and failed to take prompt remedial action reasonably calculated to end the harassment." Clearly, Mr. Cahill knew of the harassment that had taken place - Ms. Cahill reported it to him - and he did absolutely nothing to stop them.

backed up by text messages in Ms. Cahill's possession – she reported that Miller had physically assaulted her. He had held her down and choked her to the point where she later lost her voice; and he would not leave Ms. Cahill's apartment after he stopped choking her.

40.     At this point, she was in an emotional state from being attacked and used profanity around, but not directed at, law enforcement.

41.     Ms. Cahill had consumed alcohol both in her own home and outside her home on this night, but she was not scheduled to work on the day after the incident.

42.     On May 2, 2018, Ms. Cahill met with Ronald Batliner, newly appointed chief of the Virginia Beach Magistrate's Office, and Mr. Cahill to discuss the incident involving Miller. She was informed at that meeting that she was fired.

## B.    Reasons given for Ms. Cahill's firing:

43.     Mr. Cahill told Ms. Cahill that she was fired for being intoxicated and for using profanity while speaking to a police officer when that police officer responded to her 911 call. Recall, this was during a situation where *she* was reporting an assault made on her by a male co-worker to the police.

## C.    The Reasons given were clear pretext:

44.     It is abundantly clear that these reasons for her firing were clear pretext. As the facts *supra* and at ¶¶45-55 *infra* show, if Virginia Beach Magistrates were fired whenever they used profanity or were intoxicated, there would be no Magistrates left in the office. Prior to her firing, it was no secret that the prevalent use of alcohol and profanity was common with those employed in the Virginia Beach Magistrate's Office.

**D.     Prior Incidents of Alcohol/Substance Abuse and Profanity by Magistrates other than Ms. Cahill that did not result in disciplinary action.**

45.     On October 22, 2017, Ms. Cahill encountered Laura Tsai ("Tsai"), who was the Chief of the Virginia Beach Magistrate's Office at the time, at the Norfolk Wine Festival. Tsai was visibly intoxicated in public.

46.     On October 23, 2017, Tsai stated that she had been late to work because she had been very intoxicated and was experiencing a hangover. Tsai was not disciplined for being drunk in public or being late to work in relation to this incident.

47.     On March 17, 2018, Ms. Cahill witnessed Magistrate Miller become so intoxicated that he fell in the parking lot of Chick's Oyster Bar and was bleeding. He was recognized by a sheriff's deputy, who said the only reason Miller was not arrested was because of his job. Miller was not disciplined for this incident, though he was drunk in public at the time.

48.     Ms. Cahill many times, on a near daily basis, has witnessed Magistrates using profanity while in the office, including in front of police officers, as well as citizens. In particular, Ms. Cahill has witnessed Magistrate Doug Kellam ("Kellam") scream profanity in his office or through windows at people as well as throwing objects and kicking trashcans while conducting hearings. Ms. Cahill never once witnessed anyone, Kellam or anyone else, being disciplined for using profanity at the Virginia Beach Magistrate's Office.

49.     It was not just profanity that got a free pass at the office. While on the job, Ms. Cahill heard inappropriate language rising to the level of racial offensiveness that is hard to understand in a 21st century judicial system. For example, Ms. Cahill heard Magistrate Velber Harris ("Harris") openly refer to three African Americans that were approaching her window as "monkeys." Understand, this is a state judicial officer exercising the judicial authority of her

office referring to African American citizens in this racially disgusting manner; yet Harris was never disciplined for her choice of language.

50. On August 14, 2016, Ms. Cahill witnessed then-Magistrate Lochart intoxicated in public while Ms. Cahill was walking with Lockhart on the Virginia Beach boardwalk. Lockhart was never disciplined for his public intoxication.

51. On one occasion, Ms. Cahill and Lochart had to go to the Virginia Supreme Court building in Richmond to conduct mock hearings for Magistrate trainees. Lochart became extremely intoxicated before this mock-hearing training session and vomited in the Supreme Court building. Lochart was never disciplined for being drunk at this official training session.

52. Ms. Cahill learned that prior to her hiring, Magistrate Kelley Donellan ("Donellan") worked at the Virginia Beach Magistrate's Office. She would frequently arrive at work high on narcotics; on one day, it was so visible that Donellan was dazed and drooling while performing her official duties. Additionally, she brought a firearm into the office on more than one occasion. Mr. Cahill did nothing more than send her home on the days he knew Donellan was under the influence of narcotics. On the days that Donellan was under the influence and Mr. Cahill did not notice, Donellan executed and served warrants in her intoxicated state. Mr. Cahill, who was Chief of the Virginia Beach Magistrate's Office at the time, hid this from his supervisors in Richmond so as not to reflect adversely on his own performance. Ms. Cahill avers that there is record in the Virginia Beach Magistrate's Office of the office's investigation of Donellan's behavior.

**E. Conclusion as to pretext:**

53. All the above behavior demonstrated that alcohol/drug abuse was rampant in the Virginia Beach Magistrate's office – both on and off duty - openly and notoriously enough to

give the office supervisors at least constructive notice of such behavior. In the case of the Magistrate conference in Richmond, the alcohol was even ***provided*** by Ms. Cahill's supervisors and superiors, who provided free drink tickets for members of the office. Yet NONE of the incidences of alcohol and/or drug use listed above – even on duty alcohol or drug use - resulted in discipline – except for Ms. Cahill, when she was fired on May 2, 2018 for being intoxicated (out of the office and not on duty) when she was attacked by fellow Magistrate Miller. Additionally, profanity was often used in the office pervasively enough that supervisors had to be aware of the use of profanity; yet no one was ever disciplined, much less fired, for using profanity - except Ms. Cahill.

54.     All of the above instances of profanity and swearing – even Magistrates while in the performance of their duties calling African American citizens "monkeys", which goes beyond mere casual swearing and shows an intolerable racial bias among judicial officers in the office - show that profanity and swearing (and worse) was condoned in the office and resulted in no discipline for anyone – except for Ms. Cahill, when she was fired for using profanity, on May 2, 2018.

55.     Yet, within twelve (12) days of Ms. Cahill's reporting an assault committed on her by a drunken co-worker, and after her list of sexual harassment complaints detailed above, "profanity and alcohol use" were the reasons given for her termination.  It is clear those reasons were pretextual, and Ms. Cahill was fired in retaliation of her exercise of her rights under Title VII of the Civil Rights Act of 1964 to be free from discrimination in the workplace based on her sex.

**COUNT I**
**Violation of 42 U.S.C. §2000e-2(a)(1)**
**Sexually Hostile Work Environment**

56.     Ms. Cahill incorporates by reference the factual assertions set forth in ¶¶1-55 *supra.*

57.     To make a *prima facie* hostile work environment claim under Title VII, Ms. Cahill must plead (1) that the conduct in question was unwelcome, (2) that the harassment was based on sex, (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment, and (4) that some basis exists for imputing liability to the employer. *Paroline v. Unisys Corp.,* 879 F.2d 100, 105 (4th Cir. 1989)(citing *Swentek v. USAIR, Inc.,*830 F.2d 552, 557 (1987)).

58.     Ms. Cahill did not welcome the conduct that Ms. Cahill experienced, both from her co-workers and her supervisor, Mr. Cahill, set forth above.

59.     Every one of the instances of conduct of which Ms. Cahill complains had a sexual connotation that was open and obvious. Her harassment was clearly based on sex.

60.     The "severe or pervasive" element of a hostile work environment claim "has both subjective and objective components." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003) (en banc). First, the plaintiff must show that she "subjectively perceived the environment to be abusive." Next, the plaintiff must demonstrate that the conduct was such that "a reasonable person in the plaintiff's position" would have found the environment objectively hostile or abusive. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998). *See also EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). Ms. Cahill lists seven (7) separate categories of conduct that she experienced within the 20 months she worked in the office. Some of those categories (the comments about her legs, the comments by the police

11

officers about the pictures they took of her) describe offensive conduct which happened multiple times. Some of the conduct (the grabbing of her buttocks by Magistrate Cowell; Magistrate Hill's drunken attempts to kiss her) involve physical and sexual battery. Clearly, the offensive conduct of which Ms. Cahill complains was severe and pervasive, both subjectively and objectively.

61.     An employer is liable for harassment by the victim's co-workers only "if it knew or should have known about the harassment and failed to take effective action to stop it." *Howard v. Winter*, 446 F.3d 559, 565 (4th Cir. 2006). "Knowledge of harassment can be imputed to an employer if a reasonable person, intent on complying with Title VII, would have known about the harassment."  *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 319 (4th Cir. 2008). Actual or constructive knowledge can be established if "complaints were lodged with the employer or the harassment was so pervasive that employer awareness may be inferred." *Swentek v. USAIR, Inc.,* 830 F.2d 552, 558 (4th Cir. 1987). In one instance (the "Birthday Present" comment), the perpetrator of the harassing conduct was Ms. Cahill's supervisor, Mr. Cahill. In another instance, Ms. Cahill reported the continued harassment of the Virginia Beach police officers (passing her pictures around with crude sexual messages attached) to Mr. Cahill, and Mr. Cahill did nothing. In all other instances, the conduct of which Ms. Cahill complains was done so openly, obviously and notoriously in the office, in front of and within earshot of personnel in the office, that the supervisors in the office, and thus Ms. Cahill's employer, OES, had constructive knowledge of the incidents that form the basis for Ms. Cahill's Complaint.

## COUNT II
## Violation of 42 U.S.C. §2000e-2(a)(1)
## <u>Retaliatory Firing</u>

62.     Ms. Cahill incorporates by reference the factual assertions set forth in ¶¶1-61 *supra.*

63.     Pleading a *prima facie* case of retaliation requires facts that show: (1) the plaintiff engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. *Foster v. Univ. of Md.- E. Shore*, 787 F.3d 243, 251-53 (4th Cir. 2015).

64.     Ms. Cahill engaged in the protected activity of reporting a Title VII violation to her supervisor, Mr. Cahill.

65.     Ms. Cahill was then terminated.

66.     Ms. Cahill was terminated because of her engagement in the protected activity of making her Title VII complaint. This causation can be shown by two things: (a) the temporal proximity between Ms. Cahill's report of the harassing behavior on January 19, 2018 and her firing on May 2, 2018 (*see Addison v. Sumter Cty. Sheriff's Office*, 2018 U.S. Dist. LEXIS 134142, *22, 2018 WL 3768513 (D.S.C 2018)(a time period of a little less than 3 months was sufficient to show causation); and (b) the clear pretext that Mr. Cahill gave Ms. Cahill for her firing - that she was fired for swearing and being intoxicated in public. If there is one thing the facts pled *supra* indicate, public drunkenness and swearing are not firing offenses in the Virginia Beach Magistrate's Office.

WHEREFORE, the Plaintiff, Karly R. Cahill, by counsel, moves this Court for the following relief:

**On Count I of the Complaint:**

67.     An award of $300,000.00 in compensatory damages for her emotional distress and mental anguish.

68.     An award of her attorney's fees and litigation costs for prosecuting this action.

69.     Pre-and post-judgment interest on the judgment awarded.

**On Count II of the Complaint:**

70.     An award of her lost wages, totaling $14,002.00 to date.

71.     An award of $300,000.00 in compensatory damages for her emotional distress and mental anguish.

72.     An award of her attorney's fees and litigation costs for prosecuting this action.

73.     Pre-and post-judgment interest on the judgment awarded.

**Jury Demand:**

The Plaintiff demands a trial by Jury on Counts I and II of her Complaint.

                                        **KARLY R. CAHILL**

                                        By: /s/ Michael L. Donner, Sr.
                                                Of Counsel


Michael L. Donner, Sr., Esq. (VSB No. 40958)
SETLIFF LAW, P.C.
4940 Dominion Boulevard
Glen Allen, VA 23060
Telephone: (804) 377-1260
Facsimile: (804) 377-1280
mdonner@setlifflaw.com
*Counsel for Plaintiff Karly R. Cahill*