EEOC Form 161 (11/16)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**     MAY 0 6 2019

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Karly Cahill<br>2126 Pier Pointe Place<br>Virginia Beach, VA | From: | Norfolk Local Office<br>200 Granby Street<br>Suite 739<br>Norfolk, VA 23510 |
|---|---|---|---|

[ ]   *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 437-2019-00274 | Michael T. Johnson,<br>Investigator | (757) 441-3706 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*[signature]*     4/30/19
Norberto Rosa-Ramos,     (Date Mailed)
Local Office Director

Enclosures(s)

cc:   Donna L. Morris            Michael L. Donner, Sr.
     HR Analyst                SETLIFLAW, P.C.
     Supreme Court of Virginia    4940 Dominion Blvd.
     100 North 9th Street        Glen Allen, VA 23060
     Richmond, VA 23219

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** – not 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy act statement before completing this form. Division of Human Rights, Virginia OAG and EEOC State or local Agency, if any | [X] FEPA [X] EEOC | 437-2019-00274N |

| NAME (Indicate Mr., Ms., Mrs.) Ms. Karly Cahill | | HoME TELEPHONE (Include Area Code) (302) 229-3859 |
|---|---|---|
| STREET ADDRESS 2126 Pier Pointe Place | CITY, STATE AND ZIP CODE Virginia Beach, Virginia | DATE OF BIRTH August 14, 1990 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below).

| NAME Commonwealth of Virginia Virginia Beach Magistrate's Office | NUMBER OF EMPLOYEES, MEMBERS +15 | TELEPHONE (Include Area Code) (757) 385-4724 |
|---|---|---|
| STREET ADDRESS 2501 James Madison Boulevard | CITY, STATE AND ZIP CODE Virginia Beach, Virginia 23456 | COUNTY |
| NAME | NUMBER OF EMPLOYEES, MEMBERS: | TELEPHONE (Include Area Code) |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box (es))

[ ] RACE   [ ] COLOR   [X] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN

[X] RETALIATION   [ ] AGE   [ ] DISABILITY   [ ] OTHER Pregnancy Act

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA): July 24, 2016
LATEST (ALL): May 2, 2018

[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s))

See attached sheet.

[X] I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone Number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 11/29/18   Charging Party: Karly R Cahill

State of Virginia
City of Va Beach to wit:

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

/x/ Karly R Cahill     11/29/18
SIGNATURE OF COMPLAINANT    DATE

Sworn to and subscribed to before the undersigned notary public in and for said jurisdiction this 29 day of November, 2018.

My commission expires 9/30/2019

Arlene A Kilgore
Notary Public

[Notary seal: ARLENE A. KILGORE, NOTARY PUBLIC, REG # 212162, COMMISSION EXPIRES 9/30/2019, COMMONWEALTH OF VIRGINIA]

I.    Background:

The claimant, Ms. Karly Cahill, was sworn in as a Magistrate to serve in the Virginia Beach Magistrate Office on July 24, 2016. This was an exciting time for Ms. Cahill, as it was her first job out of law school (after completing a one-year judicial clerkship) and fulfilled her dream of serving her community. However, from the time she was hired to the time she was fired, Ms. Cahill was forced to an endure a toxic and hostile work environment in and out of the Virginia Beach Magistrate's Office while at work and work-related functions due to the Commonwealth's lack of control and oversight of its employees.

Ms. Cahill's testimony will show the types of behavior that she was forced to frequently endure during her employment. Her employment environment was littered with coworkers who, with little corrective action from supervisors, regularly abused alcohol and drugs. Even on the job, magistrates in the office, while in the exercise of their judicial functions, were under the influence of alcohol and drugs. At functions sanctioned by the office and social functions away from the office, alcohol abuse ran rampant.

No doubt the office environment that turned a blind eye to the rampant alcohol abuse and drug use contributed to the environment that turned a blind eye to the sexual harassment and physical assault that Ms. Cahill suffered from her work peers, during and after work hours at the Virginia Beach Magistrate's Office. During all times pertinent to this charge, Ms. Cahill was under the direct control and supervision of her supervisors: (a) Tom Cahill, Regional Supervisor of Magistrates (no relation); (b) Ronald Batliner, Chief of the Virginia Beach Magistrates Office, and (c) Laura Tsai.

II.   Incidents Contributing to a Hostile Work Environment based on Sex:

1.     On August 14, 2016, Ms. Cahill witnessed then-Magistrate Charles Lochart become intoxicated in public. While Ms. Cahill was walking with Mr. Lochart on the Virginia Beach boardwalk, a homeless man, Edwin Page, exposed his genitals to Ms. Cahill and began touching same. Ms. Cahill dialed 911 immediately following this incident. When Ms. Cahill reported the incident to Tom Cahill, his response was, "So, you got the birthday present I sent you."

2.     On October 31, 2016, Ms. Cahill noticed that then-Magistrate Jack Hill had become intoxicated at the Annual Magistrate Conference, a work-related event. Ms. Cahill then witnessed Mr. Hill staggering and falling due to his intoxication, so Ms. Cahill offered to walk him to his hotel room. Mr. Hill then vomited and attempted to kiss Ms. Cahill when she tried to assist him. Mr. Hill then asked Ms. Cahill if she wanted to engage in a threesome with him and another individual. Ms. Cahill refused these sexual advances. Ms. Cahill reported Mr. Hill's unwelcomed sexual advances to several of her coworkers. Mr. Hill was so hungover due to his overuse of alcohol that he had to leave the conference the next day. The alcohol at the conference was provided by the magistrates' Supervisors in Richmond. The Supervisors hosted a bar room at the hotel for the magistrates to drink and handed out free drink tickets at the conference. No action was ever taken against Mr. Hill for his inebriation or his sexually-based behavior towards Ms. Cahill.

3.     On August 12, 2017, Ms. Cahill witnessed Magistrate Bertram Cowell become so intoxicated in public that he vomited on Ms. Cahill's arm. Two sheriff's deputies, who

recognized Mr. Cowell, had to physically carry him and put him in an Uber vehicle. Prior to being carried to the Uber vehicle, Mr. Cowell sexually battered Ms. Cahill, grabbing her waist and buttocks and trying to pull Ms. Cahill onto his lap. Mr. Cowell was not disciplined for this incident.

      3a.      On several occasions during her employment, Ms. Cahill was subjected to Mr. Cowell's remarks that he "liked her butt." Mr. Cowell made several comments that he "did not mind if Ms. Cahill came into his office, because he liked her butt," or words to that effect. He said this in the open in the office for anyone within earshot to hear; Magistrate Jeremy Miller was an ear-witness to several of these comments.

      4.      While Ms. Cahill was in the process of training new magistrates, Ms. Cahill remarked that she was tired. Magistrate Paul Sutton screamed out to her, accusing her falsely of "being in a Navy Seal's bed all night" as the reason for her being tired. This very public and open false accusation happened in full view and earshot of all the other men and women whom Ms. Cahill was training, humiliated Ms. Cahill in front of them, and caused Ms. Cahill to lose respect among her peers.[1]

      5.      On December 25, 2017, Ms. Cahill was scheduled to work. Given that the men in the office had been dressing in a festive manner that week, including tacky sweaters, ties that played Christmas music, and another female magistrate came to work in a full Santa costume, Ms. Cahill chose to wear a Christmas-themed blazer over a red work-appropriate dress that she had worn at work many times prior to that day. Tom Cahill later communicated to Ms. Cahill that she could no longer wear Christmas-themed clothing because the Office had to be impartial about religion. At this time, Ms. Cahill pointed out that others, mostly men, had also worn Christmas attire without being spoken to about their dress. To Ms. Cahill's knowledge, none of her male colleagues received a similar reprimand because of their dress around the Christmas holiday.

      6.      Several times during her employment, Ms. Cahill entered the kitchen in the Virginia Beach Magistrate's Office to put her lunch in the refrigerator prior to exercising that morning. She would be wearing her gym clothes. Later, Ms. Cahill's superior reprimanded her for wearing gym clothes in the office. Ms. Cahill complained about this treatment, pointing out to her superior at the time that the men in the office wore their gym clothes in the office on the regular basis and often changed into and out of their gym clothes at the office, as well. She even pointed out that she had once accidentally walked in on a male magistrate changing into workout clothes in the hearing room – the door to the hearing room had been left unlocked. Her superior agreed with Ms. Cahill's point, but still penalized Ms. Cahill on her annual evaluation for wearing her gym clothes in the office. To the best of Ms. Cahill's knowledge, no male employee

---

[1] Mr. Sutton also is well-known for making racist and sexist comments in the office. Ms. Cahill has witnessed Mr. Sutton refuse to issue warrants to women who were assaulted, simply because the women had been drinking. Ms. Cahill has heard Mr. Sutton refer to any Spanish-speaking person as "a Mexican" during his hearings. Mr. Sutton made derogatory remarks frequently about African Americans while in the office. Mr. Sutton told Ms. Cahill that that he used to refer to African Americans as "Italians" when he in the Navy so he could belittle them without consequence. Again, it is amazing that a man of his prejudiced outlook operates as a state judicial officer.

was penalized on their evaluation for this same reason even though they engaged in the exact same behavior as Ms. Cahill. Other than the penalization for her dress, Ms. Cahill received perfect scores as to her competency on the job on her evaluation.

7. On March 13, 2018, Carl Twiford, the magistrate in charge of training Ms. Cahill, told her that she would make more money "demonstrating dildos" than she would as a magistrate. Mr. Twiford several times remarked to Ms. Cahill in the office about her calves, saying he "was a leg guy." He said this to Ms. Cahill several times during Ms. Cahill's initial training and told her not to report him to HR.

8. Ms. Cahill learned that while working in her capacity as a magistrate in the Virginia Beach Circuit Courthouse, Virginia Beach police officers present at her hearings would often photograph her legs and transmit said pictures to other police officers with suggestive, sex-related captions, one of which was: "I'd fuck the shit out of this Magistrate." Once this information was brought to Ms. Cahill's attention, she immediately reported it to Tom Cahill on January 19, 2018. Tom Cahill made no effort to fix the problem whatsoever. He never contacted anyone in the police officers' chain of command to get them to stop this behavior. After reporting the incident, the first time, it was later brought to Ms. Cahill's attention that police officers continued to take pictures of her with suggestive messages attached. Again, no superior at her office took any action to stop this disgusting behavior.[2]

## III. Retaliatory Firing:

9. Following her reporting the sexual harassment, as such reports are described above, Ms. Cahill gauged that Tom Cahill's reaction grew not just more ambivalent toward the situation, but more disdainful toward Ms. Cahill personally. Ms. Cahill feared that if she reported any additional harassment contributing to a hostile work environment she had been forced to endure, that there would be repercussions and that she would be retaliated against. On April 20, 2018, her fears came to fruition.

### A. Facts surrounding Ms. Cahill's firing:

10. On April 20, 2018, off duty and in her own home, Ms. Cahill was attacked by another Virginia Beach magistrate, Mr. Jeremy Miller. Mr. Miller was highly intoxicated at the time of the attack. Because of the attack, Ms. Cahill feared for her life and dialed 911. Police responded to the scene, and Ms. Cahill explained to the officers exactly her account of what happened, which to this day has not been refuted, and which account was backed up by text

---

[2] The fact that the police officers were employees of the City of Virginia Beach, and not the Commonwealth, does not absolve the commonwealth from liability if the officers contributed to the hostile work environment. In *Freeman v. Dal-Tile Corp.,* 750 F.3d 413, 423 (4th Cir. 2014), the Court in the U.S. Court of Appeals for the 4th Circuit stated, "Similar to the reasoning set forth for employer liability for co-worker harassment, an employer cannot avoid Title VII liability for third-party harassment by adopting a "see no evil, hear no evil" strategy. Therefore, an employer is liable under Title VII for third parties creating a hostile work environment if the employer knew or should have known of the harassment and failed to take prompt remedial action reasonably calculated to end the harassment." Clearly, Tom Cahill knew of the harassment that had taken place, and he did absolutely nothing to stop them.

messages in Ms. Cahill's possession – she reported that Mr. Miller had physically assaulted her. He had held her down and choked her to the point where she later lost her voice; and he would not leave Ms. Cahill's apartment after he stopped choking her. At this point, she was in an emotional state from being attacked and used profanity around, but not directed at, law enforcement. Ms. Cahill had consumed alcohol both in her own home and outside her home on this night, but she was not scheduled to work on the day after the incident. On May 2, 2018, Ms. Cahill met with Ronald Batliner, newly appointed chief of the Virginia Beach Magistrate's Office, and Tom Cahill to discuss the incident involving Mr. Miller. She was informed at that meeting she was fired.

        B.       **Reasons given for Ms. Cahill's firing:**

11.    Ms. Cahill was fired ostensibly for being intoxicated and for using profanity while speaking to a police officer. Recall, this was during a situation where *she* was reporting an assault made on her by a male coworker to the police.

        C.       **The Reasons given were clear pretext:**

12.    It is abundantly clear that these reasons for her firing were clear pretext. As the facts *supra* and at ¶¶13-18 *infra* show, if Virginia Beach magistrates were fired whenever they used profanity or were intoxicated, there would be no magistrates left in the office. Prior to her firing, it was no secret that the prevalent use of alcohol and profanity was common with those employed in the Virginia Beach Magistrates Office.

        D.       **Prior Incidents of Alcohol/Substance Abuse and Profanity not resulting in disciplinary action.**

13.    On October 22, 2017, Ms. Cahill encountered Laura Tsai, who was the Chief of the Virginia Beach Magistrate's Office at the time, at the Norfolk Wine Festival. Ms. Tsai was visibly intoxicated and the next day stated that she had been late to work because she had been very intoxicated and was experiencing a hangover. Ms. Tsai was not disciplined for being intoxicated in relation to this incident.

14.    On March 17, 2018, Ms. Cahill witnessed Magistrate Jeremy Miller become so intoxicated that he fell in the parking lot of Chick's Oyster Bar and was bleeding. He was recognized by a sheriff's deputy, who said the only reason Mr. Miller was not arrested was because of his job. Mr. Miller was not disciplined for this incident.

15.    Ms. Cahill has many times and on a near daily basis witnessed Magistrates using profanity while in the office, including in front of police officers, as well as citizens. In particular, Ms. Cahill has witnessed Magistrate Doug Kellam scream profanity in his office or through windows at people as well as throwing objects and kicking trashcans while conducting hearings. Ms. Cahill never once witnessed anyone, Mr. Kellam or anyone else, being disciplined for using profanity at the Virginia Beach Magistrates Office.

16.    It was not just profanity that got a free pass at the office. While on the job, Ms. Cahill heard inappropriate language rising to the level of racial offensiveness that is hard to understand in a 21st century judicial system. For example, Ms. Cahill heard Magistrate Velber Harris refer to three African Americans that were approaching her window as "monkeys."

Understand, this is a state judicial officer exercising the judicial authority of her office referring to African American citizens in this racially disgusting manner; yet Ms. Harris was never disciplined.

17. On August 14, 2016, Ms. Cahill witnessed then-Magistrate Charles Lochart intoxicated in public while Ms. Cahill was walking with Mr. Lockhart on the Virginia Beach boardwalk. Mr. Lockhart was never disciplined for his public intoxication.

17a. On one occasion, Ms. Cahill and Mr. Lochart had to go to the Virginia Supreme Court building in Richmond to conduct mock hearings for magistrate trainees. Mr. Lochart became extremely intoxicated before this mock-hearing training session and vomited in the Supreme Court building. Mr. Lochart was never disciplined for being drunk at this official training session.

18. Ms. Cahill learned that prior to her hiring, Magistrate Kelley Donellan worked at the Virginia Beach Magistrates Office. She would frequently arrive at work high on narcotics; on one day, it was so visible that Ms. Donellan was dazed and drooling while performing her official duties. and she brought a firearm into the office on more than one occasion. Tom Cahill did nothing more than send her home on the days he knew Ms. Donellan was under the influence of narcotics. On the days that Ms. Donellan was under the influence and Mr. Cahill did not notice, Ms. Donellan executed and served warrants in her intoxicated state. Mr. Cahill, who was Chief of the Virginia Beach Magistrates Office at the time, hid this from his supervisors in Richmond so as not to reflect adversely on his own performance, and Mr. Cahill was later promoted to Regional Supervisor. Ms. Cahill avers that here is record in the VB Magistrate's Office of Ms. Donellan's behavior.

19. Ms. Donellan also assaulted two other magistrates on the job; one of whom was Magistrate Sonja Wheaton. Ms. Wheaton became so angry at Ms. Donellan that she texted Ms. Donellan that she would "put her in a grave," or words to that effect. Cahill suspended Ms. Wheaton for sending that text; but he never disciplined Ms. Donellan. Ms. Wheaton complained about the disparate treatment to her superiors in Richmond – Cahill's disciplining Ms. Wheaton but not Ms. Donnellan.

E. **Prior incident of victim of sexual assault being disciplined differently than her male victimizer.**

19. A Virginia Beach Magistrate, Steven Teverbaugh, engaged in sexual relations with a female magistrate during certification training and was accused of sexual assault stemming from the same encounter. Mr. Teverbaugh was suspended for two days without pay because of the incident but was not disciplined any further. The female magistrate, however, was fired due to the incident; Ms. Cahill suspects that the female magistrate was fired because she was accused of making up the assault allegations.

F. **Prior incident of female magistrates being disciplined differently than their male counterparts.**

20. Bert Cowell and Beverly Anderson were magistrates in the office. One of Mr. Cowell's relatives or friends (Ms. Cahill is not sure which he was) was held without bond by Magistrate Velber Harris. Ms. Anderson called Mr. Crowell to advise him of the situation. Mr.

5

Cowell asked Ms. Anderson to change the bond status. Ms. Anderson was fired for changing the bond status, but Mr. Cowell was not disciplined at all, even though Mr. Cowell had asked Ms. Anderson to do that for which she was fired. Mr. Cowell told Ms. Cahill that Mr. Cahill verbally reprimanded him, but he never suffered an adverse employment action, even though Ms. Anderson had been fired.

### G. Conclusion as to pretext:

21. All the above behavior demonstrated that alcohol/drug abuse was rampant in the Virginia Beach Magistrate's office – both on and off duty. In the case of the Magistrate conference in Richmond, the alcohol was even *provided* by Ms. Cahill's supervisors and superiors, who provided free drink tickets for members of the office. Yet NONE of the incidences of alcohol and/or drug use listed above – even on duty alcohol or drug use - resulted in discipline – except for Ms. Cahill, when she was fired on May 2, 2018 for being intoxicated (out of the office and not on duty) when she was attacked by fellow magistrate Jeremy Miller.

22. All of the above instances of profanity and swearing – even magistrates while in the performance of their duties calling African American citizens "monkeys", which goes beyond mere casual swearing and shows an intolerable racial bias among judicial officers in the office - show that profanity and swearing (and worse) was condoned in the office and resulted in no discipline for anyone – except for Ms. Cahill, when she was fired for using profanity on May 2, 2018.

23. Yet, within twelve (12) days of Ms. Cahill's reporting an assault committed on her by a drunken coworker, and after her list of sexual harassment complaints detailed above, "profanity and alcohol use" were the reasons given for her termination. It is clear those reasons were pretextual, and Ms. Cahill was fired in retaliation of her exercise of her rights under Title VII of the Civil Rights Act of 1964 for be free from discrimination in the workplace on the basis of her sex.

## IV.   Conclusion

The Virginia Beach Magistrate's Office subjected Ms. Cahill to a work environment that was both subjectively and objectively sexually hostile to her. This constitutes discrimination by the Commonwealth of Virginia, her employer, on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964.

Ms. Cahill was fired from her job as a Virginia Beach Magistrate in retaliation for her exercising her rights under Title VII of the Civil Rights Act of 1964 to report and be free from a sexually hostile work environment. This retaliatory firing violated Title VII of the Civil Rights Act of 1964.

COUNSEL FOR KARLY CAHILL:

_/s/ Michael R. Donner_

Michael L. Donner, Sr., Esq. (VSB No. 40958)
SETLIFLAW, P.C.
4940 Dominion Boulevard
Glen Allen, VA 23060
Telephone: (804) 377-1260
Facsimile: (804) 377-1280
mdonner@setliflaw.com
*Counsel for Plaintiff Karly Cahill*